**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SELENE FINANCE LP, SELENE DILIGENCE LLC, SELENE TITLE, LLC, | ) ) ) ) |
| Plaintiffs, | ) C.A. No. ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| ZETA SERVICES INC., | ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiffs Selene Finance LP ("Selene Finance"), Selene Diligence LLC ("Selene Diligence"), and Selene Title, LLC ("Selene Title"), for their Complaint against Defendant Zeta Services Inc., allege and state as follows:

## NATURE OF THE CASE

1.      Plaintiffs bring this action for trademark infringement, false designation of origin, trademark dilution and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and corresponding state laws, to halt Defendant's violations of Plaintiffs' valuable trademark rights in their SELENE marks.

## PARTIES

2.      Plaintiff Selene Finance is a Delaware limited partnership with its principal place of business at 3501 Olympus Blvd., Suite 500, Dallas, Texas 75019.

3.      Plaintiff Selene Diligence is a Delaware limited liability company with its principal place of business at 3501 Olympus Blvd., Suite 500, Dallas, Texas 75019.

4.      Plaintiff Selene Title is a Delaware limited liability company with its principal place of business at 3501 Olympus Blvd., Suite 500, Dallas, Texas 75019.

5.     Defendant Zeta Services Inc. is a Delaware corporation with its principal place of business at 2633 Camino Ramon, Suite 470, San Ramon, California, 94583, and has appointed Valid Group, Inc., 501 Silverside Rd., Suite 105, Wilmington, Delaware 19809 as its registered agent for service of process in this District.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. § 1331; 28 U.S.C. § 1338; and 28 U.S.C. § 1367.

7.     This Court has subject matter jurisdiction over Counts I and II of this Complaint pursuant to 28 U.S.C. § 1331 and § 1338 because these Counts present a federal question under the following provisions of the United States Code:

        a.     Count I (Trademark Infringement – 15 U.S.C. § 1114); and

        b.     Count II (Federal False Designation of Origin and Federal Unfair Competition – 15 U.S.C. 1125(a)).

8.     This Court has supplemental jurisdiction over Counts III-V, which are Delaware state law claims, because they form part of the same case or controversy.

9.     This Court has personal jurisdiction over Defendant because it is incorporated in the State of Delaware.  Additionally, Defendant is, and has been, conducting continuous and systematic business by promoting and selling goods and services within the State of Delaware and within the boundaries of this District.  Defendant has also caused harm and committed unlawful acts hereinafter complained of in the State of Delaware and the boundaries of this District, and Plaintiffs have suffered harm in the State of Delaware and the boundaries of this District as a result of Defendant's action.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTS

### *The SELENE Marks*

11.     Selene Holdings LLC ("Selene Holdings") was founded in 2007 and is comprised of a family of companies that market and provide industry leading loan servicing, diligence, and title solutions as part of its ecosystem of offering loan-resolution strategies to its customers in the financial services industry, including investors, lenders, clients and financial institutions, ("Industry Customers"), as well as Industry Consumers' individual and commercial borrowers ("Borrowers").  *See generally, e.g.,* https://www.seleneadvantage.com/.

12.     Selene Finance is one company within the Selene "family" of entities; its parent is Selene Holdings.  Selene Finance is a specialty loan subservicer with a history of consistent quality performance, offering full-service solutions supporting all aspects of residential mortgage servicing.  It does so by, among other things, investing in industry leading platforms and on-going innovation in technology to execute on a strategy that is designed to reduce, mitigate, or eliminate loss exposure while maximizing cash flow for its Industry Customers.  *See* Ex. 1; *see also* https://www.seleneadvantage.com/selene-finance.  All of Selene Finance's services are marketed and sold under the SELENE Marks (as defined below).

13.     Among the services that Selene Finance offers under the SELENE Marks (as defined below) are call centers and technology platforms that, for example, handle inquiries from Borrowers who (for example) have mortgages being serviced by Selene Finance (but which are owned by Selene Finance's Industry Customers).  These SELENE call centers and platforms include, but are not limited, the ability to respond to inquiries ranging from the ability to accept payments, requests for payoff information, questions on Borrowers' loans, and discussions about loss mitigation and home retention options.

14.    As discussed below, these services also include a "digital assistant" or "chatbot" called SELENE Navigator.  Additionally, and as discussed below, Selene Finance plans to expand its marketing and use of artificial intelligence ("AI") in its call centers, and to communicate with Borrowers—all under the SELENE Marks.  Selene Finance also employs technology to communicate, under the SELENE Marks, with its Industry Customers about different aspects of their respective loan portfolios.

15.    Other of Selene Holdings' subsidiary companies—including Selene Diligence and Selene Title—market and sell services to their respective Industry Customers under the SELENE Marks (individually and collectively, the "Other Selene Entities"):

a.    **Selene Diligence:**  Performs comprehensive and dynamic reviews of all loans (including portfolio trades, securitization, mortgage serving rights trading, and warehouse lending) and loan attributes (including credit underwriting, property valuation, regulatory compliance, mortgage fraud, data integrity, legal/modification documents, payment history, collection comments, and servicing activity), documentation and third-party data sources to mitigate risk, including by levering technology for its Industry Customers.  *See* Ex. 2; *see also* https://www.seleneadvantage.com/selene-diligence.  Additionally, as discussed below, Selene Diligence intends to use the SELENE Marks in connection with AI-related technology tools.

b.    **Selene Title:**  Facilitates real estate transactions for mortgage servicers, lenders, and investors in the single family residential, originations, and default markets by delivering title insurance and settlement solutions for its Industry Customers.  *See* Ex. 3; *see also* https://www. seleneadvantage.com/title-overview.  Further, as discussed below, Selene Title intends to use the SELENE Marks in connection with AI-related technology tools.

16.    Since at least 2008, Selene Finance and the Other Selene Entities have used one

of the SELENE Marks (U.S. Registration No. 4,474,487) and variations of that mark to identify the services they offer throughout the United States. Since at least 2021, Selene Finance (and the Other Selene Entities) have used the remainder of the SELENE Marks and variations of those marks to identify the services that each of these entities offers (and have offered) throughout the United States.

17. Since at least 2008, Selene Finance and the Other Selene Entities have invested extensive resources in developing, rendering, advertising, promoting, and marketing services under at least one of the SELENE Marks in the United States (including in the State of Delaware) in commerce and establishing these services in the minds of each entities' Industry Customers and the public as high-quality services that Selene Finance and the Other Selene Entities offers. As a result, in addition Selene Finance's registered rights (described below), Selene Finance and the Other Selene Entities enjoy strong common law rights in the SELENE Marks, embodying invaluable goodwill.

18. Since at least 2008, Selene Finance and the Other Selene Entities prominently have used the SELENE Marks in advertising and promotional materials, including, but not limited to, print advertisements, brochures, and the Internet. These materials are provided to, among others, actual and prospective Industry Customers and to the public.

19. Since at least 2008, Selene Finance and the Other Selene Entities have advertised and sold services under the SELENE Marks throughout the United States (including in the State of Delaware and within the boundaries of this District), including, but not limited to, via the Internet and other mediums.

20. The SELENE Marks are inherently distinctive and have become favorably known among Selene Finance's and the Other Selene Entities' Industry Customers and the public in

connection with the respective services offered by Plaintiffs under the SELENE Marks. Consequently, the SELENE Marks have become invaluable symbols of the source of services that Selene Finance and the Other Selene Entities offer under the SELENE Marks, of the high quality of those services, and of consumer goodwill associated with the SELENE Marks.

21.    Selene Finance and the Other Selene Entities therefore have common law rights to the SELENE Marks in connection with the services that they offer and sell in the United States, including in the State of Delaware.  The SELENE Marks (as used herein) include common law rights in the SELENE Marks.

22.    Selene Finance is the owner of U.S. federal trademark registrations, and has corresponding common-law trademark rights (which the Other Selene Entities also have) in several marks, which include (individually and collectively the "SELENE Marks"):[1]

---

[1] On April 3, 2025, Selene Finance filed U.S. Trademark Application No. 99119757 for SELENE with an "at least" first use date of March 6, 2021 in Class 36 ("Financial advisory and consultancy services, namely, providing information in the nature of loan information and guidance via telephone, mobile device, email, personal interaction and call centers; Financial advisory and consultancy services, namely, providing real estate mortgage banking and lending sub-servicer services for mortgage loans and home equity lines of credit via telephone, mobile device, email, and personal and automated interaction and call centers; Financial advisory and consultancy services, namely, providing information in the fields of real estate mortgages and home equity lines of credit by way of via telephone, mobile device, email, and personal and automated interaction and call centers.").

That same day (April 3, 2025), Selene Finance also filed U.S. Trademark Application No. 99119730 for SELENE NAVIGATOR with an "at least" first use date of February 5, 2025 for Class 36 ("Financial advisory and consultancy services, namely, loan and lending consultation and information in the fields of real estate mortgages and home equity lines of credit by way of chat bots, virtual assistants and call centers") and Class 42 ("Providing temporary use of on-line non-downloadable software for facilitating interaction and communication between humans and artificial intelligence (AI) chatbots and virtual assistants in the fields of real estate mortgage banking and lending services; Providing a web site featuring technology that enables users to access non-downloadable software using artificial intelligence for real estate mortgage banking and lending services; Providing temporary use of online non-downloadable chatbot software using artificial intelligence (AI) for providing information, guidance, resources, and answers to questions on a broad range of topics for real estate mortgage banking and lending services; Providing temporary use of online non-downloadable chatbot software using artificial intelligence (AI) for interactive communication with an AI-powered chat bot for real estate mortgage banking and lending services; Providing temporary use of online non-downloadable chatbot software using artificial intelligence (AI) for connecting chatbots and humans to facilitate communication and interaction in the field of real estate mortgage banking and lending services.").

Although Selene Finance will seek to amend its Complaint to add any federally registered marks that result from the aforementioned applications, it and the Other Selene Entities have common law rights to SELENE for the services

| Mark | Reg. No. | First Use | Goods |
|---|---|---|---|
| SELENE | 4,474,487 | 7/11/08 | Class 36: Financing and loan services. |
|  | 6,816,106 | 3/6/21 | Class 36: Mortgage banking services, namely, servicing of mortgage loans; Insurance services related to real estate transactions, namely, title insurance underwriting, title insurance consultation and title insurance claims processing; financial loan consultation in the fields of mortgage loan review and financial due diligence; Insurance services, namely, insurance administration in the fields of real property insurance, errors and omissions insurance, cyber security and business liability insurance for data breaches; insurance agency services in the field of surety bonds |
|  | 6,816,107 | 3/6/21 | Class 36: Mortgage banking services, namely, servicing of mortgage loans; Insurance services related to real estate transactions, namely, title insurance underwriting, title insurance consultation and title insurance claims processing; financial loan consultation in the fields of mortgage loan review and financial due diligence; Insurance services, namely, insurance administration in the fields of real property insurance, errors and omissions insurance, cyber security and business liability insurance for data breaches; insurance agency services in the field of surety bonds |

described in those applications (and herein); these common law trademark rights are incorporated into the SELENE Marks, at least for purposes of Counts II-V set forth below.

| Mark | Reg. No. | First Use | Goods |
|---|---|---|---|
| **selene** | 6,816,108 | 3/6/21 | Class 36: Mortgage banking services, namely, servicing of mortgage loans; Insurance services related to real estate transactions, namely, title insurance underwriting, title insurance consultation and title insurance claims processing; financial loan consultation in the fields of mortgage loan review and financial due diligence; Insurance services, namely, insurance administration in the fields of real property insurance, errors and omissions insurance, cyber security and business liability insurance for data breaches; insurance agency services in the field of surety bonds |
| **selene** | 6,816,109 | 3/6/21 | Class 36: Mortgage banking services, namely, servicing of mortgage loans; Insurance services related to real estate transactions, namely, title insurance underwriting, title insurance consultation and title insurance claims processing; financial loan consultation in the fields of mortgage loan review and financial due diligence; Insurance services, namely, insurance administration in the fields of real property insurance, errors and omissions insurance, cyber security and business liability insurance for data breaches; insurance agency services in the field of surety bonds. |
| **selene** T I T L E | 7,049,654 | 3/6/21 | Class 36: Mortgage banking services, namely, servicing of mortgage loans; Insurance services related to real estate transactions, namely, title |

| Mark | Reg. No. | First Use | Goods |
|---|---|---|---|
| | | | insurance underwriting, title insurance consultation and title insurance claims processing; financial loan consultation in the fields of mortgage loan review and financial due diligence; Insurance services, namely, insurance administration in the fields of real property insurance, errors and omissions insurance, cyber security and business liability insurance for data breaches; insurance agency services in the field of surety bonds. |
|  | 7,049,655 | 3/6/2021 | Class 36: Mortgage banking services, namely, servicing of mortgage loans; Insurance services related to real estate transactions, namely, title insurance underwriting, title insurance consultation and title insurance claims processing; financial loan consultation in the fields of mortgage loan review and financial due diligence; Insurance services, namely, insurance administration in the fields of real property insurance, errors and omissions insurance, cyber security and business liability insurance for data breaches; insurance agency services in the field of surety bonds. |
|  | 7,133,810 | 3/30/21 | Class 36:  Mortgage banking services, namely, servicing of mortgage loans; Insurance services related to real estate transactions, namely, title insurance underwriting, title insurance consultation and title insurance claims processing; financial loan consultation in the fields of mortgage loan review |

9

| Mark | Reg. No. | First Use | Goods |
|---|---|---|---|
| | | | and financial due diligence; Insurance services, namely, insurance administration in the fields of real property insurance, errors and omissions insurance, cyber security and business liability insurance for data breaches; insurance agency services in the field of surety bonds. |
| **selene** D I L I G E N C E | 7,133,811 | 3/30/21 | Class 36: Mortgage banking services, namely, servicing of mortgage loans; Insurance services related to real estate transactions, namely, title insurance underwriting, title insurance consultation and title insurance claims processing; financial loan consultation in the fields of mortgage loan review and financial due diligence; Insurance services, namely, insurance administration in the fields of real property insurance, errors and omissions insurance, cyber security and business liability insurance for data breaches; insurance agency services in the field of surety bonds. |

23.     All of the aforementioned federal registrations are valid, subsisting, and are in full force and effect.  True and accurate copies of documents retrieved from the U.S. Patent and Trademark Office's online Trademark Status & Document Retrieval database evidencing the current status and current ownership of the aforementioned registered trademarks are attached as Exs. 4-12.

24.     U.S. Trademark Registration No. 4,474,487 has achieved incontestable status pursuant to 15 U.S.C. § 1065.  Accordingly, that registration provides conclusive evidence of the

validity of that registered trademark, Selene Finance's ownership of that registered trademark, and Selene Finance's exclusive right to use (and to allow the Other Selene Entities to use) that registered trademark in connection with the services specified in the certificate of registration for that registered trademark. *See* 15 U.S.C. § 1115(b).

25.     Selene Finance is entitled to a presumption of nationwide exclusive trademark rights to use the SELENE Marks since July 8, 2011—that is the registration date of U.S. Trademark Registration No. 4,474,487. *See* 15 U.S.C. §§ 1115(b) and 1072.

26.     Selene Finance and the Other Selene Entities are under common control, including for using the SELENE Marks in connection with advertising, marketing, selling, and conducting their respective services in the United States. The Other Selene Entities therefore are authorized to use the SELENE Marks, which they do (and have done) in connection with advertising, marketing, selling, and conducting their services in the United States.

### Selene Finance's SELENE Navigator "Digital Assistant" and Use of AI

27.     In addition to the services identified herein offered under the Selene Marks, Selene Finance recently unveiled a new "digital assistant" called SELENE Navigator. As Selene Finance stated in its January 28, 2025 announcement, "[o]ur investment in Selene Navigator demonstrates our commitment to meeting our customers in their channel of choice." *See* Ex. 13.

28.     SELENE Navigator is marketed and used in connection with Selene Finance's call centers and technology platforms, which are all used to communicate with Borrowers (of its Industry Customers) on matters relating their mortgages and accounts—including payments, mortgage assistance, document requests and other account related details, and providing on demand problem solving capabilities (among other things).

29.     SELENE Navigator was launched to the public on February 5, 2025. That same

day, Selene Finance began a public marketing campaign that included an email to Selene

Finance's Industry Customers, that contained a screenshot of SELENE Navigator:



30.    At or around the time of its launch of SELENE Navigator, Selene Finance also

sent a letter to certain of its Industry Customers, in which it announced and promoted SELENE

Navigator, using the SELENE Marks, as another example of the "exceptional customer service"

that Selene Finance provides to its Industry Customers.  A true and accurate copy of an example

of such a letter is attached hereto as Ex. 14.

31.    Thus, beginning on at least January 28, 2025 (when Selene Finance publicly

announced SELENE Navigator), and certainly by February 5, 2025 (when SELENE Navigator

was publicly launched), Selene Finance has used the SELENE Marks in connection with

SELENE Navigator.

32.      Selene Finance also has plans to incorporate AI into SELENE Navigator and/or other of its services offered and sold under the SELENE Marks, including in connection with its call centers and technology platforms.

33.      The Other Selene Entities also each have plans to incorporate AI into the services that they offer to their Industry Customers in connection with the SELENE Marks and are also considering using SELENE Navigator in connection with their services offered under the SELENE Marks.

### *Defendant's Infringing Acts*

34.      According to its website and its Annual Report filed with the Delaware Secretary of State, Defendant was founded in 2020 as a "banking technology company" with a platform that "enables financial institutions to launch extensible and compliant banking asset and liability products, across cards, loans and deposits, rapidly."  Defendant also claims that its "cloud-native and fully API-enabled[2] stack supports processing, issuing, lending, core banking, fraud, loyalty, digital banking apps, and many other capabilities."

35.      Defendant claims that it has over 1,700 employees in locations across the United States (and the world) and its investors include SoftBank's Vision Fund, Optum, Lunate, and Mastercard.  On or about February 11, 2025, Defendant announced that, based on its recent fundraising activities, it was valued at about $2 billion.

36.      On February 25, 2025, Defendant announced its launch of "Selene," which it claims is an AI-powered "virtual assistant" or "chatbot" that Defendant markets and sells to companies in the financial services industry to provide customer support to those companies' credit card customers/borrowers.  Defendant's uses of "Selene" as the name of its AI-powered

---

[2] Plaintiffs understand "API" is an abbreviation for "application programming interface."

assistant/chatbot, and all of the associated advertising and marketing (collectively, "Defendant's Infringing Mark"), constitutes Defendant's impermissible use of the SELENE Marks.

37.    Defendant uses Defendant's Infringing Mark to provide, render, and promote goods and services that are the same as Plaintiffs', or are highly similar to Plaintiffs', and to consumers that are identical or overlap with Plaintiffs' Industry Customers.  For example, both Defendant and Plaintiffs use the mark SELENE in connection with offering goods and services to Industry Customers that, among other things, allow such customers to interact with their respective individual consumers/borrowers (including Borrowers).

38.    Defendant prominently uses Defendant's Infringing Mark in connection with marketing, selling, and using its AI-powered virtual assistant/chatbot, called "Selene." Defendant's Infringing Mark is displayed on numerous marketing and advertising materials available on Defendant's website and posted to the Internet (as well as, upon information and belief, additional marketing materials provided to Defendant's actual and prospective Industry Customers).  Further, Defendant markets and uses Defendant's Infringing Mark in its AI-powered virtual assistant/chatbot, such that users of it will view Defendant's Infringing Mark in close proximity to the goods/services Defendant offers:

39.     As the above image shows, "Selene" is identified as the name of Defendant's virtual assistant/chatbot, which (in the above image) provides a list of topics consumers/borrowers can inquire about with respect to their financial account(s) held by Defendant's customers.  Similarly, in the aforementioned image of SELENE Navigator, "Selene" and "Selene Navigator" are used to identify Selene Finance's virtual assistant/chatbot which (in that image) provides a list of topics consumers/borrowers can inquire about with respect to their financial account(s) held by Selene Finance's Industry Customers.

40.     Upon information and belief, Defendant's SELENE assistant is marketed and sold to financial services industry companies for use in interactions with their individual consumers/borrowers, including to provide information about those consumers'/borrowers' financial accounts.  Likewise, SELENE Navigator is marketed and sold (under the SELENE

Marks) as part of Selene Finance's services to Industry Customers for use in interactions with their Borrowers, including to provide information about their consumers'/borrowers' financial accounts. Thus, in both instances, individual consumers/borrowers are presented with Defendant's Infringing Mark and the SELENE Marks in connection with a virtual assistant/chatbot that can provide them with information about their accounts at financial institutions (which are, at minimum, Selene Finance's and/or Defendant's customers).

41.     On February 28, 2025, Selene Finance sent Defendant a cease-and-desist letter notifying it of Selene Finance's prior rights in certain of the SELENE Marks and demanding Defendant cease using Defendant's Infringing Mark. A true and accurate copy of that letter is attached as Ex. 15.

42.     On March 13, 2025, Defendant responded to Selene Finance's cease-and-desist letter. A true and accurate copy of that letter is attached as Ex. 16. In that letter, Defendant did not contend that the identified SELENE Marks were invalid, did not claim that Selene Finance did not own those SELENE Marks, and did not deny that it was using Defendant's Infringing Mark in commerce in the United States. Defendant also admitted that both it and Selene Finance were using the mark SELENE in connection with goods and services offered to consumers in the "financial services field."

43.     Rather, the substance of Defendant's response was to attempt to distinguish between its—incorrect—understanding of the nature and extent of Selene Finance's use of the identified SELENE Marks and the nature and extent of Defendant's use of Defendant's Infringing Mark. According to Defendant, Selene Finance's use of those SELENE Marks is solely in connection with "financing services targeting consumers, homeowners, and potential homeowners seeking mortgage financing." Defendant contends that its use of Defendant's

Infringing Mark is in connection with "an AI software platform to financial institutions and fintech companies."

44.     Defendant's characterization of the scope of the SELENE Marks and Plaintiffs' use of them to offer services and the channels of trade in which they are offered, is incorrect—which is readily apparent from a review of Selene Finance's public marketing materials (and those of the Other Selene Entities), including those described herein.

45.     Contrary to Defendant's (incorrect) assumption, individual homeowners and/or borrowers are *not* Selene Finance's actual or target customers.  Rather, Selene Finance's customers (and potential customers) are financial services companies that originate or acquire real estate mortgage loans who want to leverage Selene Finance's technology and expertise to service such loans to "reduce, mitigate or eliminate loss exposure [on loans] while maximizing cash flow."  *See* Ex. 1; *see also* https://www.seleneadvantage.com/selene-finance.  This technology and expertise include, but are not limited to, call centers and technology platforms that Selene Finance uses to provide services to its Industry Customers—for example, to receive and respond to inquiries from Borrowers who have mortgages owned or originated by Selene Finance's Industry Customers.  This technology includes, but is not limited to, SELENE Navigator.  That Selene Finance, under the SELENE Marks, services mortgages for its Industry Customers' Borrowers (so that Industry Customers do not have to) does not mean that Selene Finance's customers are "homeowners."

46.     Selene Finance also uses technology (which uses the SELENE Marks) to communicate with its Industry Customers to provide them with information on their loans and their portfolios that Selene Finances services on their behalf.

47.     Further, several of Selene Finance's (actual and potential) Industry Customers

have diversified consumer credit related business lines and have call centers/technology platforms to interact with their consumers/borrowers, which is the same class of customer and channel of trade that Defendant—using Defendant's Infringing Mark—markets and sells its SELENE goods or services.  In fact, Selene Finance markets its services, using the SELENE Marks, to "investors, originators, and government agencies" as well as "Wall Street, Private Equity, REITs, and GSEs."[3]  *See* Ex. 1; *see also* https://www.seleneadvantage.com/about-us ("Selene Finance focuses on strong loss mitigation strategies for diverse third-party clients, spanning from large banks to government agencies").  Additionally, Selene Finance markets its use of "proprietary technology and workflow" to its (actual and potential) Industry Customers using the SELENE Marks.  *Id.*

48.    For example, and as described above, Selene Finance markets and uses its SELENE Navigator virtual assistant/chatbot as part of the services it provides to its Industry Customers, so that Selene Finance can interact with individual borrowers (who have accounts or loans with Selene Finance's Industry Customers) and provide information about such accounts or loans.  Other examples of uses of the SELENE Marks in connection with Selene Finance's services are discussed herein.

49.    As explained herein, Selene Finance is not the only authorized entity that uses the SELENE Marks to offer services in the United States; the Other Selene Entities are also authorized to (and actually do) offer such services.  The Other Selene Entities' use of the SELENE Marks is also not simply in connection with "financing services targeting homeowners…seeking mortgage financing."

50.    For example, Selene Diligence uses the SELENE Marks to advertise and market

---

[3] REIT is an acronym for real estate investment trust and GSE is an acronym for "government sponsored enterprise," such as Fannie Mae and Freddie Mac

its services to "provide a full range of loan review due diligence services" to "lenders and investors." *See* Ex. 2; *see also* https://www.seleneadvantage.com/selene-diligence.  In other words, Selene Diligence offers its services (under the SELENE Marks) to, among others, financial services industry companies, including banks, originators, aggregators, insurance companies, etc. for large-scale or bulk transactions in connection with real estate. *Id.* Additionally, Selene Diligence uses the SELENE Marks to market its "[i]ndustry-leading technology, including a fully interactive client portal…" *Id.*

51.    As another example, Selene Title uses the SELENE Marks to advertise and market its services as a "nationwide title insurance and settlement provider" and its (actual and potential) customers include those who are involved in "mortgage default servicing," "large portfolio acquisitions and dispositions," "securitizations," and "single family rental investments" which certainly include financial institutions. *See* Ex. 3; *see also* https://www.seleneadvantage.com/title-overview.  Selene Title also uses the SELENE Marks to promote its services that have "seamless integration within client systems," which means that its customers can benefit from Selene Title's technology platforms. *Id.*

52.    There is therefore significant overlap between Plaintiffs' use of the SELENE Marks—their services, their customers (and potential customers), and Plaintiffs' channels of trade—and Defendant's use of Defendant's Infringing Mark—Defendant's SELENE goods and services, Defendant's customers (and potential customers), and Defendant's channels of trade.

53.    Further, as explained above, both Selene Finance (at least via SELENE Navigator) and Defendant (at least via its SELENE goods and services) offer and use virtual assistants/chatbots to financial industry companies, that allow those companies' individual consumers/borrowers to interact with to obtain information about their financial accounts.  This

will lead to, at minimum, confusion with those individual consumers/borrowers. For example, such individual consumers/borrowers may have financial accounts with both Selene Finance's and Defendants' customers—and therefore will use SELENE Navigator and Defendant's "Selene" virtual assistants/chatbots to get information about their different types of accounts (e.g., mortgages and credit cards).

54. At least as of Selene Finance's February 28, 2025 cease-and-desist letter, Defendant has actual knowledge of Selene Finance's trademark rights in (at least) certain of the SELENE Marks. Defendant's continued use of Defendant's Infringing Mark is with a knowing and deliberate intent to capitalize on the reputation and goodwill of Plaintiffs and the SELENE Marks to confuse and deceive customers and to unfairly compete with Plaintiffs.

55. Plaintiffs believe discovery will demonstrate that Defendant had knowledge of Plaintiffs' rights in the SELENE Marks on or before February 25, 2025, which, upon information and belief, was at or around the time Defendant announced its use of Defendant's Infringing Mark in connection with its SELENE virtual assistant/chatbot. Among other reasons, the sophistication of Defendant's investors, Defendant's announced $2 billion valuation and large workforce, and its representation by counsel in intellectual property matters (including in connection with the SELENE Marks) suggest, at least, that Defendant conducted—or should have known it was necessary to conduct—a trademark clearance search, which would have given it notice of the SELENE Marks. Upon information and belief, Defendant knowingly and intentionally failed to conduct such a search, or it proceeded with Defendant's Infringing Mark with the full knowledge of the SELENE Marks.

56. Plaintiffs also believe discovery will demonstrate that Defendant knew of—or reasonably should have known of—the true nature and extent of Plaintiffs' services offered

under the SELENE Marks, and Plaintiffs' Industry Customers and channels of trade.

57.     Despite receiving explicit notice of Selene Finance's concerns, objections, and its prior rights in the SELENE Marks via Selene Finance's February 28, 2025 letter, Defendant refused to cease its use of Defendant's Infringing Mark.

58.     Pursuant to 15 U.S.C. § 1072, Defendant had constructive knowledge of the SELENE Marks before Defendant's unauthorized use of Defendant's Infringing Mark, which is confusingly similar to the SELENE Marks.

59.     Defendant's knowledge of, at least, Selene Finance's prior use of the SELENE Marks and its disregard for Plaintiffs' intellectual property rights demonstrates Defendant's bad faith and intentional misconduct.

60.     Plaintiffs have never authorized, licensed, or otherwise endorsed Defendant's use of Defendant's Infringing Mark or any variation thereof.

61.     Defendant's unauthorized use of Defendant's Infringing Mark in connection with the marketing and sale of Defendant's SELENE virtual assistant/chatbot interstate commerce, including in this District, has caused, and is likely to cause confusion, mistake, and deception among the relevant purchasing public.  Consumers and the trade will likely believe that Defendant's SELENE goods and services are associated, connected with, approved by or authorized by Plaintiffs, or that Defendant's SELENE goods and services originate from the same source as Plaintiffs' services, when that is not the case.

62.     Any confusion caused by Defendant's use of Defendant's Infringing Mark or in connection with Defendant's SELENE goods and services that Defendant offers under Defendant's Infringing Mark would negatively impact and seriously injure the reputation and goodwill Plaintiffs have established for themselves through their extensive use and promotion of

the SELENE Marks.

63.     All of the foregoing acts of Defendant have caused, and unless restrained by this Court, will continue to cause serious and irreparable injury and damage for which Plaintiffs have no adequate remedy at law.  Defendant has knowingly and willfully used and will continue to use Defendant's Infringing Mark in connection with the advertisement, distribution, offering for sale, and sale of Defendant's services under Defendant's Infringing Mark, to confuse and deceive consumers, and to compete unfairly with Plaintiffs.

## COUNT I
### (Infringement of Federally Registered Trademarks)

64.     Plaintiffs repeat the allegations in the preceding paragraphs of this Complaint, as though fully set forth herein.

65.     As described herein, Selene Finance is the owner of federal trademark registrations for U.S. Trademark Registration Nos. 4,474,487, 6,816,106, 6,816,107, 6,816,108, 6,816,109, 7,049,654, 7,049,655, 7,133,810, and 7,133,811 for the SELENE Marks, and the Other Selene Entities are authorized to use (and do use) the SELENE Marks.

66.     Selene Finance's ownership and its use in commerce (as well as the Other Selene Entities' use in commerce) of the SELENE Marks predate the use by Defendant of Defendant's Infringing Mark.  Selene Finance's registrations of the SELENE Marks also predate the use by Defendant of Defendant's Infringing Mark.

67.     Defendant, without the consent or authorization of Selene Finance, has used and is using in interstate commerce Defendant's Infringing Mark, which is identical and confusingly similar to Selene Finance's SELENE Marks, in connection with services that are identical and/or closely related to Plaintiffs' services that use the SELENE Marks.

68.     Defendant's use of Defendant's Infringing Mark is likely to cause confusion, or to

cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and Defendant's "Selene" services with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's "Selene" services.

69.     The acts of Defendant in its unauthorized use of Defendant's Infringing Mark in connection with Defendant's "Selene" services are intended to, and will, divert to Defendant the benefit of the reputation and goodwill symbolized by Selene Finance's federally registered SELENE Marks, all of which belong exclusively to Selene Finance and its other authorized users (*e.g.,* the Other Selene Entities).

70.     Defendant's acts constitute infringement of Selene Finance's federally registered SELENE Marks under 15 U.S.C. § 1114(1).

71.     As a result of Defendant's acts of trademark infringement, Plaintiffs are suffering irreparable harm.

72.     Unless and until enjoined by this Court, Defendant will continue to commit acts of trademark infringement, including what Defendant indicated in its response to Selene Finance's cease and desist notice (Ex. 16), and will continue to confuse the public and cause irreparable harm to Plaintiffs.

73.     Selene Finance is entitled to a permanent injunction against Defendant, as well as an award of any and all damages, costs, and/or attorneys' fees permitted under 15 U.S.C. § 1117(a).

## <u>COUNT II</u>
### (Federal False Designation of Origin and Unfair Competition)

74.     Plaintiffs repeat the allegations in the preceding paragraphs of this Complaint, as though fully set forth herein.

75.     As described above, one of the SELENE Marks (U.S. Trademark Registration No.

4,474,487) has achieved incontestable status, and all the SELENE Marks are distinctive and have acquired meaning among Industry Customers as well as Borrowers, who associate the SELENE Marks with Plaintiffs.

76.     By making unauthorized use in interstate commerce of Defendant's Infringing Mark, which is identical and confusingly similar to Plaintiffs' SELENE Marks, Defendant is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and Defendant's Infringing Mark with Plaintiffs and/or as to the origin, sponsorship, or approval of Defendant's Infringing Mark.

77.     Defendant's acts constitute false designation of origin under 15 U.S.C. § 1125(a)(1).

78.     Given the distinctiveness of Plaintiffs' SELENE Marks and Selene Finance's communications with Defendant, Defendant's conduct, as alleged herein, is intended to free-ride off the goodwill associated with the SELENE Marks and constitutes intentional and willful infringement of Plaintiffs' prior rights in the SELENE Marks.

79.     Upon information and belief, Defendant's wrongful conduct will allow it to realize substantial revenues, profits, and other benefits rightfully belonging to Plaintiffs.

80.     As a result of Defendant's acts of false designation of origin, Plaintiffs have suffered and are suffering irreparable harm.

## <u>COUNT III</u>
### (Common-law Trademark Infringement)

81.     Plaintiffs repeat the allegations in the preceding paragraphs of this Complaint, as though fully set forth herein.

82.     As described herein, Selene Finance is the owner of federal trademark registrations in the SELENE Marks.  Plaintiffs have adopted and used in commerce the SELENE

Marks for and in connection with Plaintiffs' services.

83.     Plaintiffs' ownership and use in commerce of the SELENE Marks have been continuous and predate the use by Defendant of Defendant's Infringing Mark.

84.     Before Defendant's use of Defendant's Infringing Mark, Plaintiffs offered services in the State of Delaware under the SELENE Marks.

85.     Given the distinctiveness of the SELENE Marks and Selene Finance's communications with Defendant, Defendant's conduct is willful intentional and intended to free-ride off the goodwill associated with the SELENE Marks.

86.     As a direct and proximate cause of Defendant's trademark infringement, Plaintiffs have been injured and will continue to be injured.

87.     Upon information and belief, Defendant has realized, and continues to realize, substantial revenues, profits and other benefits rightfully belonging to Plaintiffs as a result of Defendant's wrongful conduct.

88.     Defendant's conduct is causing and will continue to cause Plaintiffs irreparable harm and, unless Defendant is restrained, Plaintiffs will continue to be harmed, because they have no adequate remedy at law.

89.     Defendant's conduct, as described above, constitutes trademark infringement in violation of the common law of the State of Delaware, including within the meaning of 6 Del. C. § 3315.

## COUNT IV
### (Violation of Delaware's Deceptive Trade Practices Act – 6 Del. C. §§ 2531, et seq.)

90.     Plaintiffs repeat the allegations in the preceding paragraphs of this Complaint, as though fully set forth herein.

91.     As described above in greater detail, Plaintiffs use the SELENE Marks to market,

offer, and provide services to (actual and potential) financial services industry customers and/or to provide services to those customers' individual consumers/borrowers. For example, and as described herein, Selene Finance's services to such Industry Customers include call centers and technology platforms—which includes a virtual assistant/chatbot called SELENE Navigator—to allow those Industry Customers' individual borrowers to get information about their financial accounts/loans. The Other Selene Entities also use the SELENE Marks to market, offer, and provide services, as described above, to their respective Industry Customers.

92.     As also described above in greater detail, Defendant uses the Defendant's Infringing Mark to market, offer, and provide goods and services to (actual and potential) financial services industry customers and/or to provide services to those customers' individual consumers/borrowers. For example, and as described herein, Defendant markets, offers, and provides a virtual assistant/chatbot called "Selene" to allow such customers' individual borrowers to get information about their financial accounts.

93.     Accordingly, and as explained above in greater detail, there is significant overlap between Plaintiffs' use of the SELENE Marks—their services, their Industry Customers (and potential customers), and Plaintiffs' channels of trade—and Defendant's use of Defendant's Infringing Mark—Defendant's SELENE goods and services, Defendant's customers (and potential customers), and Defendant's channels of trade.

94.     For example, and as explained above in greater detail, both Selene Finance (at least via SELENE Navigator) and Defendant (at least via its SELENE goods and services) offer and use virtual assistants/chatbots that individual consumers/borrowers can interact with to obtain information about their financial accounts with Selene Finance's and/or Defendant's financial services industry customers. This will lead to, at minimum, confusion with those

individual borrowers, including because they may have financial accounts with both Selene Finance's and Defendants' customers—and therefore will use both virtual assistants/chatbots to get information about their respective accounts (*e.g.,* mortgage and credit card).

95.    Defendant's actions therefore:  (1) cause confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendant's Infringing Mark (*i.e.,* its "Selene" virtual assistant/chatbot) in violation of 6 Del. C. § 2532(a)(2); (2) cause likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by Selene Finance (and the Other Selene Entities) of Defendant's Infringing Mark in violation of 6 Del. C. § 2532(a)(3); and (3) constitute conduct that similarly creates a likelihood of confusion or misunderstanding between Defendant and Defendant's Infringing Mark on the one hand, and Selene Finance (and the Other Selene Entities) and their respective uses of the SELENE Marks on the other in violation of 6 Del. C. § 2532(a)(12).

96.    Upon information and belief, and as described above in greater detail, Defendant has willfully engaged in the deceptive trade practices as described above, entitling Plaintiffs to treble damages and attorneys' fees under 6 Del. C. § 2533.

## <u>COUNT V</u>
**(Trademark Dilution and Injury to Business Reputation – 6 Del. C. §§ 3313)**

97.    Plaintiffs repeat the allegations in the preceding paragraphs of this Complaint, as though fully set forth herein.

98.    As described above in greater detail, Defendant uses the Defendant's Infringing Mark to market, offer, and provide goods and services to (actual and potential) financial services industry customers and/or to provide services to those customers' individual consumers/borrowers.  For example, and as described herein, Defendant markets, offers, and provides a virtual assistant/chatbot called "Selene" to allow such customers' individual

27

borrowers to get information about their financial accounts.

99.    As explained above in greater detail, there is significant overlap between Plaintiffs' use of the SELENE Marks—their services, their Industry Customers (and potential customers), and Plaintiffs' channels of trade—and Defendant's use of Defendant's Infringing Mark—Defendant's "SELENE" goods and services, Defendant's customers (and potential customers), and Defendant's channels of trade.

100.    For example, and as explained above in greater detail, both Selene Finance (at least via SELENE Navigator) and Defendant (at least via its SELENE goods and services) offer and use virtual assistants/chatbots that individual consumers/borrowers can interact with to obtain information about their financial accounts with Selene Finance's and/or Defendant's financial services industry customers.  This will lead to, at minimum, confusion with those individual borrowers, including because they may have financial accounts with both Selene Finance's and Defendants' customers—and therefore will use both virtual assistants/chatbots to get information about their respective accounts (*e.g.,* mortgage and credit card).

101.    Any confusion caused by Defendant's use of Defendant's Infringing Mark or in connection with Defendant's SELENE goods and services that Defendant offers under Defendant's Infringing Mark would negatively impact and seriously injure the reputation and goodwill Plaintiffs have established for themselves through their extensive use and promotion of the SELENE Marks.

102.    All of the foregoing acts of Defendant have caused, and unless restrained by this Court, will continue to cause serious and irreparable injury and damage for which Plaintiffs have no adequate remedy at law.  Defendant has knowingly and willfully used - and will continue to use - Defendant's Infringing Mark in connection with the advertisement, distribution, offering

for sale, and sale of Defendant's services under Defendant's Infringing Mark, to confuse and deceive consumers, and to compete unfairly with Plaintiffs.

103.    Defendant's conduct as described above causes injury to Plaintiffs' businesses in violation of the Delaware Trademark Act, 6 Del. C. § 3313.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter full and final judgment in its favor and against Defendant as follows:

A.    That Defendant's use of Defendant's Infringing Mark in connection with Defendant's "Selene" services constitutes trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), trademark infringement under Delaware common law, unfair competition under Delaware common law, violations of Delaware's deceptive and trade practices (6 Del. C. §§ 2531, *et seq*), and trademark dilution and injury to business reputation Del. C. §§ 3313;

B.    That Defendant and its owners, parent companies, subsidiary companies, related companies, successors, assigns, officers, directors, agents, employees and attorneys, and all persons or entities in active concert, participation, or privity with any of them, be permanently enjoined, pursuant to 15 U.S.C. §1116 and applicable state laws, from:

1.    Using Defendant's Infringing Mark, including all formative variations, or any other names, marks or slogans likely to cause confusion, mistake, or deception with respect to the SELENE Marks;

2.    Doing any other act or thing likely to induce the mistaken belief that Defendant or Defendant's goods or services are in any way affiliated, connected, or associated with Plaintiffs or their services, or doing any other act or thing likely to cause confusion with respect to the SELENE

Marks;

3.　　Trading on the goodwill associated with the SELENE Marks and passing off its services as those of Plaintiffs; and

4.　　Injuring Plaintiffs' business reputation and the goodwill associated with the SELENE Marks and from otherwise unfairly competing with Plaintiffs in any manner whatsoever.

C.　　That, pursuant to 15 U.S.C. § 1118, Defendant be ordered to deliver up for destruction all materials, including, but not limited to, labels, packaging, brochures, advertisements, literature, promotions, displays, catalogs, and all other matter in the custody or under the control of Defendant bearing and/or displaying Defendant's Infringing Marks or any confusingly similar marks;

D.　　That Defendant be ordered to recall from all customers, vendors, sales people, and authorized agents all materials, including, but not limited to, product packaging, brochures, advertisements, promotions, and all other matter bearing Defendant's Infringing Mark;

E.　　That Defendant be ordered to notify all customers, vendors, sales people, and authorized agents of any Judgment in this action;

F.　　That, pursuant to 15 U.S.C. § 1116, Defendant be directed to file with this Court and to serve on Plaintiffs, within 30 days after entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

G.　　That Defendant be directed to provide a complete accounting to Plaintiffs for any and all profits realized from the sale of services under Defendant's Mark from inception up through the date of the injunction;

H.      That Plaintiffs be awarded its actual compensatory damages, including, but not limited to, Defendant's profits and Plaintiffs' damages, in an amount to be determined at trial;

I.      That Defendant be ordered to pay treble damages under 15 U.S.C. § 1117 for its knowing, intentional, and willful violations of federal law;

J.      That Plaintiffs be awarded all reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs as a result of this action;

K.      That Plaintiffs be awarded all damages available under federal and Delaware law, including Plaintiffs' actual damages suffered as a result of Defendant's acts and treble said damages as provided by law; and

L.      That Plaintiffs be awarded any such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Of Counsel:                                             /s/ James H. S. Levine
Benjamin M. Stern                                  James H. S. Levine (Del. Bar No. 5355)
NUTTER MCCLENNEN & FISH, LLP         TROUTMAN PEPPER LOCKE LLP
155 Seaport Blvd.                                   Hercules Plaza, Suite 1000
Boston, MA 02210                                  1313 Market Street
Telephone:    (617) 439-2000                 Wilmington, DE  19801
Facsimile:     (617) 310-9000                  Tel: (302) 777-6500
Email:  bstern@nutter.com                     Email:  James.Levine@troutman.com

                                                          *Attorneys for Plaintiffs Selene Finance LP,*
Dated:  April 15, 2025                           *Selene Diligence LLC, and Selene Title, LLC*